UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARNET SMITH,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | CASE NO. 2:26-cv-001861-JNW<br><br>ORDER GRANTING HABEAS CORPUS PETITION |

This matter comes before the Court on Petitioner Garnet Smith's petition for a writ of habeas corpus. Dkt. No. 1. Smith challenges the bond hearing that this Court ordered in his earlier case, arguing that it denied him due process and that his continued detention is unlawful. Having considered the petition, the response, the reply, and the bond hearing record, the Court GRANTS the petition and orders Smith's immediate release.

## 1. BACKGROUND

Petitioner Garnet Smith has been detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington since October 1, 2025, when he was arrested by Immigration and Customs Enforcement (ICE) in Spokane during a

targeted enforcement operation initiated through the Criminal Alien Program. Dkt. No. 10. Smith was identified as a noncitizen with a criminal record. *Id.* ¶ 12. On January 9, 2026, an Immigration Judge ("IJ") ordered Smith removed to Jamaica. Dkt. No. 7-4 at 2. Smith appealed the order to the Board of Immigration Appeals ("BIA").

Prior to this petition, Smith, proceeding pro se, filed a petition for a writ of habeas corpus on April 3, 2026. On May 13, 2026, this Court granted Smith's petition in part, finding that Smith's detention had become unreasonably prolonged without a bond hearing, and ordered Respondents to provide Smith with an individualized bond hearing that complies with *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See Smith v. Hernandez,* 2:26-cv-01138-JNW, 2026 WL 1328531, at *4 (W.D. Wash. May 13, 2026). On May 19, 2026, Immigration Judge John C. Odell denied Smith bond finding that the Government had shown by clear and convincing evidence that Smith was both a danger to the community and a flight risk. Dkt. No. 11-5 at 2–3. Smith now challenges his bond hearing and his continued detention as unlawful.

Smith is a citizen of Jamaica who was admitted to the United States in 1998 when was 17 years old through an "IR2-Child of a U.S. Citizen Visa." Dkt. No. 10 ¶ 3. On May 19, 2026, IJ Odell denied Smith bond, concluding that Respondents had provided clear and convincing evidence that Smith was a flight risk and a danger to the community. Dkt. No. 2-1 at 2. At Smith's bond hearing, Respondents presented one piece of evidence—Smith's I-213 Form, which includes a summary of Smith's criminal history. Dkt. No. 11-1 at 4. Smith's criminal record consists of a conviction

for domestic violence in March 2005, convictions for a violation of a protection order and assault with a firearm, witness tampering, and harassment in June 2005, two convictions for violating protection orders in September 2006 and March 2009, convictions for unlawful imprisonment, assault, violation of a protection order in April 2010, a conviction for insurance fraud in September 2017, and a conviction for harassment in November 2023. Dkt. No. 18 (Audio Record of Bond Hearing) at 20:10.

At the bond hearing, Smith presented evidence of his deep and longstanding community ties, including his five U.S. citizen children, ranging from ages five to 21-years old. Dkt. No. 2-1. He submitted letters of support from his fiancé, his brother, friends, and fellow veterans speaking to his community ties and stable residency. Dkt. No. 2-1 at 55–56, 67–69, 72, 74, 77. He included proof of his military service from 1999 to 2002, and his honorable discharge. Dkt. No. 2-1 at 53. He included proof of his fixed address and stable residency in the form of an active lease agreement under his name. Dkt. No. 2-1 at 59. He included his application for naturalization, which is pending. Dkt. No. 2-1 at 35.

The IJ denied bond in an oral ruling, concluding that the government had met its burden by clear and convincing evidence that Smith was a danger to the community and a flight risk. Dkt. No. 18; Dkt. No. 11-5 at 2–3.

## 2. LEGAL STANDARD

Federal courts can grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful

opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

Respondents argue that Smith is subject to mandatory detention throughout his removal proceedings. Dkt. No. 9 at 5. Smith does not dispute that he is detained under 8 U.S.C. § 1226(c) based on his qualifying convictions. Dkt. No. 12 at 4. The Court refers to its previous order explaining why Smith's detention, even under 8 U.S.C. § 1226(c), must comport with due process. *See Smith v. Hernandez,* 2:26-cv-01138-JNW, 2026 WL 1328531, at *2 (W.D. Wash. May 13, 2026).

### 3.1 The Court waives the prudential exhaustion requirement.

Respondents argue this Court should deny the petition because Smith has not exhausted his administrative remedies. In immigration habeas cases, administrative exhaustion is prudential, not jurisdictional. *See W.T.M. v. Bondi*, No. 25-cv-2428, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)). Prudential exhaustion is favored when "(1) agency expertise makes agency consideration necessary to generate a proper

record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Even when the *Puga* factors are met, the Court may waive prudential exhaustion if: (i) the administrative remedies are "inadequate or not efficacious," (ii) "pursuit of administrative remedies would be a futile gesture," (iii) "irreparable injury" might result, or (iv) "the administrative proceedings would be void." *See Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004)).

The *Puga* factors do not require exhaustion here. On the first factor, Smith raises a constitutional challenge to the adequacy of his bond hearing, a claim well suited for federal court review. *Singh*, 638 F.3d at 1203 n.3. Respondents argue that agency consideration is necessary because the BIA has subject matter expertise and institutional capacity to review the bond denial. That may be true, but whether, as a matter of law, the facts can sustain a finding of flight risk or danger requires no agency expertise.

On the second factor, this case raises discrete legal questions whose resolution will provide concrete guidance to the immigration court weighing criminal history records against overwhelming evidence of community ties. Such guidance may reduce the need for future habeas petitions. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025); *W.T.M.*, 2026 WL 262583, at *2.

On the third factor, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error. *See Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 WL 969764, at * 4 (W.D. Wash. Apr. 10, 2026).

Even if the *Puga* factors required exhaustion, the Court would waive the requirement because irreparable injury would result. Government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). Smith has been detained since October 2025. He has deep community ties, particularly in Spokane, Washington, where he has a fiancé, a fixed address, and employment. Requiring him to wait six months *or more* for BIA review would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process. *See W.T.M.*, 2026 WL 262583, at *3; *Vasquez Lopez v. Hernandez*, — F. Supp. 3d —, No. C26-0775 TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026); *Escalante Perez v. Hernandez*, C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

Accordingly, the Court waives any exhaustion requirement.

**3.2 The IJ's bond decision was an abuse of discretion.**

Smith argues the IJ abused its discretion in finding him a danger to the community and a flight risk in denying bond. Dkt. No. 1. Habeas courts review an IJ's bond determinations for abuse of discretion. *Martinez*, 124 F.4th at 784–85.[1]

[1] Contrary to Respondents' arguments, this Court has jurisdiction to review Smith's bond decision. Dkt. No. 9 at 2. Federal courts have jurisdiction to review "bond

The Court may determine whether the IJ applied the correct legal standard; it may not reweigh the evidence. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2017)); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (in reviewing discretionary bond determinations, federal district courts are "not required to countenance a sham").

In making bond determinations, IJ's consider the *Guerra* factors:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Even under this deferential standard, the hearing fell short, as eight out of the nine factors favor Smith.

---

hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011); *see Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases). "The application of a statutory legal standard...to an established set of facts is a quintessential mixed question of law and fact," which is reviewable by courts. *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). A bond denial due to community danger or flight risk is such a mixed question, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). To the extent Respondents contend that 8 U.S.C. § 1226(e) bars review, this Court disagrees. Smith challenges whether the IJ provided him with a constitutionally adequate bond hearing—precisely the type of claim that § 1226(e) preserves for habeas review. *See id.* at 781–82. Dkt. No. 1. Furthermore, this Court has "continuing jurisdiction to enforce [its] injunctions," *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994), one that extends to reviewing whether an IJ correctly applied the legal standard ordered by the Court at a bond hearing.

The government's case that Smith would flee was a single sentence: asked what grounds supported detention, its lawyer answered that Smith was "a danger to the community and a flight risk based upon his removal order and his criminal history." Dkt. No. 2-1 at 93. But Smith has a fixed address in Spokane, Washington, where he has a lease with his fiancé. He has lived in the United States for almost three decades. He has significant family ties in the United States—including five U.S. citizen children, ranging from five to 21-years old, and a fiancé in Spokane. Prior to his detention, Smith had steady employment as a car salesperson and delivery driver in Spokane. He has no history of immigration violations, and no record of attempts to flee prosecution or otherwise escape from authorities. He legally entered the country as a minor through a "IR2-Child of a U.S. Citizen Visa." His removal order is not yet final, and he has a pending naturalization application.

The danger finding fails too. Although a noncitizen's criminal record is relevant in a bond assessment, "the recency and severity of the offenses must be considered." *Singh*, 638 F.3d at 1206. "'[E]vidence of criminal conduct grows less powerful as it becomes less current.'" *Aguirre-Urbina v. Wilcox,* C18-1743 TSZ, 2019 WL 2161644, at *1 (W.D. Wash. May 17, 2019) (citation omitted). And "not every criminal record would support a finding of dangerousness." *Singh*, 638 F.3d at 1206 (citing *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008)). Smith's criminal history is not insignificant. He has numerous convictions, including for assault and harassment. Dkt. No. 18 at 20:10. However, "not all criminal convictions conclusively establish that a [non-citizen] presents a danger to the community, even where the crimes are serious enough to render the alien

removable." *Singh*, 638 F.3d at 1206. Here, Respondents provide no evidence about the underlying factual basis for any of Smith's offenses. Finally, most of Smith's criminal history is more than a decade old. Most of his offenses were committed in 2005 to 2010. On balance, Smith's criminal history is not so severe or recent to support a finding of dangerousness.

While an IJ is not required to "discuss each piece of evidence submitted" in assessing flight risk, an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[ ]" that undermines the assumption that the IJ considered the evidence and applied the correct standard. *Martinez*, 124 F.4th at 785. Here, the IJ failed to mention several highly probative facts that undermine Respondents' flight risk arguments. Smith's stable residency, fixed address, family and community ties, and his interest in carrying out his naturalization application, all bolster a finding that he does not present a risk of absconding. Yet the IJ's oral ruling makes no mention of the fact that the *Guerra* factors overwhelmingly favor Smith. Instead, the IJ simply relied on Respondents recitation of a summary of Smith's criminal history. Thus, the IJ's finding of flight risk cannot be sustained on this record. The IJ's bond denial does not rationally apply the governing legal standard and the facts and evidence here. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to 'consider and address in its entirety the evidence submitted by petitioner'"); *Vanessa Soto Gimenez, v. Hernandez, et al.*, , No. 2:26-cv-00966-GJL, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion); *Garcia v. Hyde*,

No. 25-cv-585-JJM-PAS, 2025 WL 3466312, at * 10 (D.R.I. Dec. 3, 2025) (abuse of discretion to disregard contrary evidence submitted by petitioner that his arrest warrant was inactive). No reasonable adjudicator could conclude on this record that Smith poses a flight risk or a danger to the community. The IJ's decision was an abuse of discretion, and Smith's continued detention violates due process.

### 3.3 The appropriate remedy.

Having found that the IJ's decision to deny bond was an abuse of discretion, the Court must determine the appropriate remedy. "Federal courts have a fair amount of flexibility" in fashioning habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Detention during removal proceedings still must bear a "reasonable relation to [its] purpose." *Demore*, 538 U.S. at 527. Because the record establishes neither flight risk nor danger, no purpose supports Smith's detention, and the typical habeas remedy— release—is appropriate. *See, e.g., Soriano*, 2026 WL 969764, at *6 (ordering immediate release for petitioner found not to be a flight risk); *Vasquez Lopez*, 2026 WL 984151, at *4 (same relief); *W.T.M.*, 2026 WL 262583, at *5 (same relief); *Garcia Miranda*, 2026 WL 1328227, at * 5 (same relief); *Zavala Sandoval*, WL 1661379 *6 (same relief). Accordingly, the Court orders Smith's immediate release.

## 4. CONCLUSION

Accordingly, the Court ORDERS the following:

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.

2. Respondents must release Petitioner from custody within TWENTY-FOUR (24) hours of this Order.

3. Respondents must file a status report within FORTY-EIGHT (48) hours of this Order, confirming that Petitioner has been released from custody.

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. See *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 20th day of July, 2026.

Jamal N. Whitehead
United States District Judge